ROBERT J. TAYLOR, complainant-respondent,

*v.*

PHOX BUS COMPANY, a corporation, et al., defendants-appellants.

[Argued February 11th, 1941.   Decided May 20th, 1941.]

*Mr. Irving Charles Picker* (*Mr. Maurice C. Brigadier,* of counsel), for the appellants.

*Mr. Paul J. Duffy,* for the respondent.

The opinion of the court was delivered by

PERSKIE, J.

This appeal presents for our consideration and determination the propriety of two orders entered in this cause on October 28th, 1940.

By the first order, the exceptions and objections taken by appellants to the intermediate report and account of the receiver of the defendant company were disallowed; the receiver's intermediate report and account were approved; and counsel for respondent was allowed a counsel fee of $600 to be paid forthwith out of the funds in the hands of the receiver.

By the second order, the court instructed and directed the receiver to accept a cash bid of $13,500 which had been made by B. J. Gannon for the bus, license and franchise of the defendant company and to execute the necessary instruments upon the payment to the receiver of the said $13,500.

A brief reference to the history of the prior litigation in this case is advisable.

Respondent, complainant below, heretofore filed a bill in Chancery against the Phox Bus Company, a corporation of this state, which, as a member of the Bergen Avenue Bus Owners Association, operated a bus line on the Bergen avenue line in Jersey City, New Jersey, under the supervision of the Board of Public Utility Commissioners. For himself and in behalf of the other members of the named association, complainant charged that, because of the inability of the Phox Bus Company to pay its indebtedness to complainant and to other of its creditors, it was insolvent within the provisions of *R. S. 14:14-3*. Defendant company was decreed to be insolvent and Edward M. Salley, Jr., was, on April 6th, 1939, appointed receiver. Defendant company appealed from that decree and we affirmed. *Taylor* v. *Phox Bus Co., 127 N. J. Eq. 255; 12 All. Rep. (2d) 674.*

The receiver qualified. On May 4th, 1939, he submitted a preliminary report to the court which, he expressly stated, was "necessarily incomplete" but submitted, nevertheless, "for the information of this court [Chancery] and all interested parties." The report pointed out that the affairs of the company were operated and controlled solely by its president, Peter J. Fox, until his death in January of 1939. He handled all the funds of the company through his own personal bank account, served as one of the two drivers of the company bus; contracted for repairs, arranged for the purchase of a new bus, and, in general, conducted the company business as though he were the personal proprietor thereof. It was also pointed out that the minutes of the company did not accurately reflect the business and financial transactions of the company and that "every issue of the company's stock lacked the necessary approval" of the Board of Public Utility Commissioners. The report also pointed out that since the company would be unable to discharge its debts out of operating revenue, an immediate liquidation was advisable; and that because of the "incomplete and unsatisfactory records" of the company, there should be "a serious investigation" into the question of the stock ownership.

The record discloses that Peter J. Fox, the deceased president, named as residuary legatees in his last will and testa-

ment his widow, Anna Fox, and his three sisters, Frances, Georgiana and Cecelia Fox. These, it would appear, are entitled to share equally in whatever interest Peter J. Fox had in the company.

On April 25th, 1939, a hearing was held before the receiver. Anna Fox, the widow, was then examined and questioned concerning various purported stock issues and financial transactions with the company in addition to her own personal interest and ownership in the stock thereof. On the same day James Raymond McBride, a nephew of the deceased president, was examined concerning his ownership of stock and his relations with the defendant company. Later, on May 23d and May 26th, 1939, hearings were again held before the receiver and the widow and Frances Fox were further examined on the subjects already indicated.

On September 23d, 1940, the receiver filed his first intermediary report and account. In this report and account he described the conduct of the company's affairs in the same manner in which he described them in the preliminary report. He reviewed the purported issues of stock (none of which was approved by the Board of Public Utility Commissioners) and the various divisions of the stock issues. He pointed out that although the Board of Public Utility Commissioners on October 28th, 1937, did certify the issue of 15 shares of no par value stock, none of these was ever issued. He also reported that after he had determined a payment of $500 by the deceased president to be an illegal disbursement of the company's capital, he had demanded and received from McBride that sum and interest. He thereupon determined that the ownership of the company was as follows:

| | |
|---|---|
| Estate of Peter J. Fox | 6 shares |
| James R. McBride | 6 shares |
| Anna Fox | 1 share |
| Frances Fox | 1 share |
| L. Arthur Frome | 1 share |

In addition, the receiver reported that his operation of the bus from March 29th, 1939, until September 1st, 1940, yielded a net operating profit of $3,393.56 of which $2,840.26 was still remaining as cash on hand as of September 14th, 1940.

The receiver also reported that the appraisers appointed by the court had appraised the assets of the company at $13,000; that he had received a bid in the sum of $13,500 for the bus and franchise, and that, in his opinion, it constituted a good offer under all circumstances, and recommended its acceptance.

The receiver prayed for a ratification and confirmation of his report and accounting, and reported a request by complainant for an allowance to him of his taxed costs and counsel fee for his solicitor.

Exceptions to the intermediate report and objections to the intermediate account of the receiver were filed by the Phox Bus Company, Frances, Georgiana and Cecelia Fox, the appellants here. After hearing the argument of counsel, the Vice-Chancellor filed a memorandum in which he reviewed the various exceptions and objections and reached the same results as the receiver. He also pointed out that a second appraisal had been made by a different appraiser and that the results were very similar and that "giving due consideration to the argument of counsel, the appraisals filed herein, and the offer of $13,500 received for the assets of the defendant corporation, I feel that the exception to the offer is without weight. The exceptants offer no proof to sustain their objections."

Accordingly, on October 28th, 1940, the two orders appealed from were advised and entered. Defendants appeal. Twenty-five grounds of appeal are set down; but six are argued.

1. *As to the first order.* (A). Four of the six grounds argued assail the general determination of the stock ownership, and especially assail the determination that James R. McBride, by reason of the additional five shares issued to him on May 18th, 1935, the *bona fides* of which is challenged, was the owner in all of six shares of the stock of the defendant company. It will serve no useful purpose to detail each ground of the assault. For, we are entirely satisfied that this branch of the order cannot be sustained. Conceding that Anna Fox and Frances Fox by their appearance before the receiver waived notice of the hearing, Georgiana and Cecelia Fox, parties in interest, under the will of Peter J. Fox, in the ownership of stock, were neither given notice of the hear-

ing nor did either in fact appear at the hearing. Nor is there a word in the record in support of the suggestion that a hearing was accorded to all the parties in interest at the argument, before the Vice-Chancellor, on the exceptions to the master's report.

Moreover, we know of no authority on the part of the receiver, or on the part of the Court of Chancery, and none is brought to our attention, which vests jurisdiction, in either, summarily to determine, as here, the ownership to the stock of the defendant company. Assuming, but not so deciding, that the receiver is presently (on an intermediate account) interested in that question, he is obliged to resort to the applicable procedure employed by all other suitors. *Cf. Grob-holz* v. *Merdel Mortgage Investment Co., 115 N. J. Eq. 411; 170 Atl. Rep. 815.* The determination of the stock ownership is a proceeding *quasi in rem.* At all events, all of the parties were entitled to notice and to an opportunity to be heard. *Cf. Andrews* v. *Guayaquil and Quito Railway Co., 69 N. J. Eq. 211* (at *p. 215*); *60 Atl. Rep. 568; affirmed, 71 N. J. Eq. 768; 71 Atl. Rep. 1133; Twining* v. *New Jersey, 211 U. S. 78; 53 L. Ed. 97, 111; Cooke* v. *United States, 267 U. S. 517; 69 L. Ed. 767.* Additionally, they were entitled to have their rights of ownership to the stock determined by a legally competent tribunal having jurisdiction of the case. *Cf. Powell* v. *Alabama, 287 U. S. 45, 68; 77 L. Ed. 158, 170.* The parties in interest were denied these basic, elementary rights. This branch of the order is fatally defective. It fails to satisfy the federal and state constitutional essentials of due process of law.

(B). We are entirely satisfied that the allowance of counsel fee of $600 to complainant is fair, reasonable and proper.

2. *As to the second order.* It is clear that the Chancery Court may order a receiver to sell the whole or part of the property of the insolvent corporation when the interests of the parties demand it. What facts should induce the court to order such a sale vary with the circumstances of each particular case. *4 Pom. Eq. Jur. § 1630.* It should be observed, however, that "a sale should not * * * be authorized or directed unless a necessity therefor appears and, as a general

principle, if the rights of the parties can reasonably be protected in any other way the power to sell should be denied to the receiver." *53 C. J. 204 § 314.*

Here, the property of the corporation is not perishable. Nor do the necessities of the situation require a sale to preserve the value of the assets. Furthermore, the receiver reported that his operation of the bus for a period of 17½ months yielded a net operating profit of $3,393.56; that of the $5,177.22 claims for debts incurred prior to the appointment of a receiver, he had allowed without challenge on this appeal only $1,834.64 in which sum there was included a claim of $1,120 by the widow Anna Fox; that the receivership expenses were only $336; that after the payment of $187.36 for the corporation income tax for the year 1939 and $1,056 on account of notes held by the Mack Motor Co., under a conditional sales agreement for the sale of the bus to the company, the cash balance, as of September 14th, 1940, was $2,840.26. Deducting the total amount of the claims allowed, $1,834.64, from the cash balance in the hands of the receiver, $2,840.26, there is a net cash balance in the hands of the receiver of $1,005.62. The laudable result thus accomplished rather negatives the necessity of a sale. On the contrary, the result would appear to justify the conclusion that a further continuance of the operation of the bus business of defendant company by the receiver, for a reasonable period, should produce sufficient moneys to satisfy all creditors and costs of the receivership and should enable the court, on proper application and showing to direct the receiver to re-convey the assets of the defendant company to those ultimately entitled thereto.

This order is reversed. No costs are allowed to either party. The cause will be remanded to the court below there to be treated consistently with this opinion.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Colie, Dear, Wells, Wolfskeil, Rafferty, Hague, Thompson, JJ. 15.