The bill in this case was filed for the purpose of determining the number and types of shares of stock issued by the Phox Bus Company and for the determination of the ownership of the said shares.
The Phox Bus Company is a corporation of this state and is now in the hands of a receiver appointed by this court. One of the Vice-Chancellors of this court attempted to determine the ownership of the stock in a summary proceeding which was reversed by the Court of Errors and Appeals on that ground and on the further ground that all of the interested parties were not brought into court. See Taylor v. Phox Bus Co., 129 N.J. Eq. 610.
The company was formed under the General Corporation Act, R.S.Title 14, on March 17th, 1931, for the purpose of taking over and operating a bus theretofore operated by Peter J. Fox in Jersey City. The minute book of the company discloses that the authorized capital was $100,000. The shares were $100 par value and were subscribed to as follows: Peter J. Fox, eight shares; Anna T. Fox, his wife, one share, and Frances A. Fox, his sister, one share. The above named were elected directors and Peter J. Fox, president; Harry T. Fox (who was not a director or stockholder), vice-president, and Frances A. Fox, secretary-treasurer.
The minutes of the company disclosed that it agreed to accept the proposal of Peter J. Fox to purchase the assets of the said Peter J. Fox without specifying the same. The number of shares was left blank and the delivery date was March —, 1931.
The stock book shows that the following certificates were issued: Certificate No. 1, dated March 18th, 1931, to Peter J. Fox, eight shares; certificate No. 2, same date, to Anna *Page 188 
T. Fox, one share; certificate No. 3, same date, to Frances A. Fox, one share; certificate No. 4, same date to James R. McBride, one share; certificate No. 5, same date, to L. Arthur Frame, one share; certificate No. 6, same day, to Peter J. Fox, six shares; certificate No. 7, dated May 18th, 1935, to James R. McBride, five shares; certificate No. 8, dated July 26th, 1935, to Peter J. Fox, — shares. This last certificate was not signed. All of the above certificates had been separated from the stubs and subsequently refastened thereto. None of them bear the endorsements of the holders named therein. There was testimony that certificates Nos. 4 and 7, issued in McBride's name; certificate No. 5, issued in the name of Frame, and certificate No. 6, issued to Fox were actually made in July, 1935, and not on the dates appearing in the record.
The records are most incomplete. The treasurer was authorized to open an account of the company which was never done. As a matter of fact, the entire finances of the company were handled by Peter J. Fox, individually. All receipts were deposited in his personal checking account and all bills were paid by checks drawn on that account.
I am satisfied from the evidence that Peter J. Fox intended to and issued ten shares of stock, eight of which were to be held by himself and one each by his wife and sister. Subsequently he transferred one share to each of his nephews, McBride and Frame. Why he did this does not appear. He had six shares left in his own name. In order to qualify McBride as a driver of the bus he gave him five shares of the company's stock in order to obtain municipal approval of a non-union man to drive the bus. One Mary Hayes gave Fox a check for $500 which was intended to be proof of payment for the five shares issued to McBride. Sometime after this, Mrs. Hayes told Peter J. Fox that she needed the money and on September 26th, 1935, he repaid the money to Mrs. Hayes by his own check.
Stock book stub for certificate No. 8, which was never signed, is dated July 26th, 1935, and purports to be a transfer of McBride's six shares to Fox. The stock book also discloses that even after the six shares were supposed to be *Page 189 
transferred to Fox by McBride that McBride was still the holder of six shares.
Some time in September, 1935, it appears that an effort was made to change the stock from par value to no-par value. When this was done it appears that there were issued to Peter J. Fox, 120 shares; Anna T. Fox, ten shares; Frances A. Fox, ten shares, and L. Arthur Frame, ten shares. There were also certificates made out for sixty shares to each Peter J. Fox and McBride. None of these certificates were ever executed.
Peter J. Fox, on October 14th, 1937, appeared before the Board of Public Utility Commissioners and asked permission to issue fifteen shares of no-par value stock. He testified before the board that "no stock had ever actually been issued." He also testified that the owners of the stock were his wife, Anna T. Fox; Frances A. Fox, his sister; Arthur Frame, his nephew, and himself. He said that he would hold twelve shares and each of the others one share. He also said that the consideration was the transfer of the bus from his name to the corporation and that there was no money transaction. The Public Utility Commission approved the stock issue on October 28th, 1937, as follows:
"1. The issuance of fifteen (15) shares of capital stock having no par value, but having a stated value of One Hundred Dollars ($100) per share, total issue One Thousand Five Hundred Dollars ($1,500)."
According to the records of the company, however, no such shares were ever issued. Peter J. Fox continued to operate the business as theretofore until his death which occurred about the early part of 1939. The receiver was appointed on April 6th, 1939.
Under the terms of the will of Peter J. Fox, the residuary estate, which will include the said stock, was left to his wife, Anna, and his three sisters, Georgina, Cecelia and Frances, share and share alike.
The complainants contend that the only shares of stock which are valid are those which are approved by the Public Utility Commissioners being the fifteen shares of no-par value stock. *Page 190 
I am satisfied that Peter J. Fox intended to conduct his business under the corporate form, and that, in order to comply with the requirements of the Corporation Act, he named his wife and sister as two of the three necessary incorporators. Neither of the latter, however, paid for the stock issued to them; Fox alone furnished the consideration for the shares issued.
Sufficient steps were taken to constitute the Phox Bus Company a de jure corporation. Fox, however, as a matter of fact, by virtue of his controlling interest, conducted the affairs of the company as if he were the personal proprietor of the business. He was the dominant figure of the company and the others were mere "dummies." He manipulated the stock ownership to suit the needs of the occasion.
I also find that the corporation actually issued ten shares of its capital stock and that Peter J. Fox was the beneficial owner of all of said ten shares. His wife and sister were "dummies."
It is contended by Frame that the one share he held was by way of gift. This contention is not supported by the proofs. The stock issued to McBride, in my opinion, was issued merely for the purpose of perpetrating a fraud on the municipal bus bureau. There is no evidence before me as to how McBride got the first share of stock. It is quite clear, however, that he paid no consideration for it.
Complainants contend that the stock ownership must be determined in accordance with the approval of the Board of Public Utility Commissioners for the reason that under R.S. 48:3-9 no public utility stock can issue without the approval of the said board. That statute has no applicability in the question before me. It is a mere regulatory provision and does not affect the ownership of stock. Such an argument is without merit for, as a matter of fact, while Fox testified before the Public Utility Commission that the stock would issue or had issued, it never was issued. The Public Utility Commission did not attempt to decide who the stockholders would be or how many shares were to be held by each. The respective rights of the parties are matters of substantive law, to be determined by this court. *Page 191 
The defendant McBride, by his counter-claim, asks this court that in case it is decided he is not the owner of the stock that the receiver be directed to return to him the money heretofore paid by him. It appears that the receiver, after conducting his hearings, determined that the repayment by Fox to Mrs. Hayes constituted an illegal disbursement of the capital of the company and demanded payment of McBride for the amount so repaid plus interest. Pursuant to this demand, McBride paid the receiver the sum of $627.50 on June 30th, 1940. In view of the above conclusions, the receiver will be directed to reimburse McBride.
I will advise a decree in accordance with these views.