285 N.J. Super. 202 (1995)
666 A.2d 992
IN THE MATTER OF THE PETITION OF VALLEY ROAD SEWERAGE COMPANY FOR APPROVAL OF AN INCREASE IN ITS RATES FOR SEWER SERVICE.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1995.
Decided November 3, 1995.
*205 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
Michael E. Rodgers argued the cause for appellant Valley Road Sewerage Company (Pinto, Rodgers & Kopf, attorneys; Mr. Rodgers, on the brief).
Sarah H. Steindel, Deputy Attorney General, argued the cause for respondent New Jersey Board of Public Utilities (Deborah T. Poritz, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, and Elise W. Goldblat, Deputy Attorney General, of counsel; Ms. Steindel, on the brief).
Frank N. Yurasko argued the cause for respondent Township of Hillsborough (Mr. Yurasko, on the brief).
Menasha J. Tausner, Deputy Public Advocate, argued the cause for respondent Division of Ratepayer Advocate (Frances I. Sundheim, Acting Director, attorney; Ms. Tausner, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents questions of public concern. At issue is whether the Board of Regulatory Commissioners (now the Board of Public Utilities) (Board) may deny or curtail rate relief to a public utility based upon that utility's failure to furnish adequate service. We hold that the Board may deny a rate increase because of a utility's poor performance over an extended period of time notwithstanding the fact that operating losses will inevitably follow from the denial.

*206 I.
The salient facts are not in dispute. Valley Road Sewerage Company (Valley) applied to the Board for a rate increase on August 21, 1992. The matter was referred to the Office of Administrative Law as a contested case. Following lengthy hearings, the administrative law judge issued an initial decision in which he recommended denying Valley's application. Citing years of financial mismanagement, the judge concluded that the company's present management could not be relied upon to apply the requested additional revenues to the problems besetting the company. The Board adopted the judge's findings and denied Valley's request for rate relief pending hearings concerning whether the company's operating authority should be revoked. The Board additionally directed that the docket "remain open in the event that future circumstances render rate relief feasible."
Valley appealed the Board's order. While this appeal was pending, the Board conducted hearings and ultimately directed the filing of a complaint in the Chancery Division for the appointment of a receiver to manage the company's day-to-day operations and eventually sell it to a qualified entity. For the reasons set forth in its letter opinion dated April 18, 1995, the Chancery Division ordered the appointment of Robert G. Goode as receiver with full authority over the company's assets and operations. The court directed the receiver to solicit offers from qualified buyers interested in acquiring Valley. We are told that Valley has filed separate appeals from the Board's revocation decision and the Chancery Division's judgment.
The sole issue in the present appeal is whether the Board violated Valley's constitutional and statutory rights by denying rate relief. The company was established in the early 1960's by Richard Schindelar, who remains the sole shareholder. Valley provides sewage collection and treatment services to customers in Hillsborough and Tewksbury Townships. A small segment of its customers are served by a treatment plant in Tewksbury known as the Pottersville plant. The remaining customers are served by *207 two treatment plants in Hillsborough, namely the River Road and Fieldhedge Drive plants.
The company's financial condition has long been precarious. Valley has never reported a profit. Its financial statements disclose negative retained earnings approaching two million dollars. Its liabilities include over $400,000 in overdue gross receipts and franchise taxes owed to the State. This liability is the result of Valley's acknowledged failure to pay this tax since the State began collecting it in 1980. Additional taxes are owed to various municipalities.
Valley also has an appalling record of environmental violations. The record reveals chronic problems with "infiltration and inflow" of excessive amounts of extraneous water, such as groundwater and sump pump discharge, into its sewage collection system. Despite numerous skirmishes with the Department of Environmental Protection (DEP), penalty assessments continue to be imposed at an alarming rate. In 1985, Valley entered into an administrative consent order with the DEP in which it agreed to pay over $12,000 in penalties for numerous violations at the company's River Road and Fieldhedge Drive plants. Valley also agreed to undertake remedial measures, including the hiring of a full-time operator for the two plants and the retention of an independent contractor to reduce the company's infiltration and inflow problem. Only parts of this remediation plan were actually implemented.
In 1992, the DEP assessed Valley approximately $660,000 in penalties for violations of effluent limits and other conditions of the company's pollution discharge permit. Although the DEP subsequently agreed to reduce these penalties if Valley's infiltration and inflow problems were eradicated, no evidence was presented that the company ever submitted the required plan to the DEP.
In addition, Valley's permit for its Fieldhedge Drive plant was conditioned upon the plant's ceasing operations no later than November 1, 1987, by interconnecting with the Hillsborough *208 Township Municipal Utilities Authority system pursuant to a bulk customer agreement. However, no interconnection has taken place because Valley failed to reduce its infiltration and inflow to the levels required by the bulk customer agreement.
Valley contends that its failure to resolve these environmental problems was the result of its inability to obtain sufficient revenues. However, the record reflects that Valley filed for rate increases twice before the present application, and that it received substantial increases on both occasions. Nevertheless, the company's financial condition has continued to deteriorate.
It would be superfluous to recite in detail the other evidence in the record disclosing Valley's inertia. Suffice it to say, the administrative law judge characterized Valley's decline, especially its failure to pay overdue taxes, as the "most egregious example[] of corporate mismanagement [he] had [ever] witnessed." The judge concluded that "the existing management of the Valley Road Sewer Company ha[d] failed over the past twenty years" to provide "safe, adequate and proper service to its customers." As we noted earlier, the Board adopted these findings and directed that hearings be conducted to consider whether Valley's operating authority should be revoked. We merely add that the findings made by the administrative law judge and the Board are supported by substantial, credible evidence present in the record. See Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 92-93, 312 A.2d 497 (1973); Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). Indeed, the hearing transcripts fairly reek of chronic corporate mismanagement resulting in the company's abysmal failure to furnish adequate service to its customers.
It is against this factual backdrop that we examine Valley's claim that the Board's action denied it a reasonable rate of return.

II.
A public utility has the constitutional and statutory right to a reasonable rate of return. N.J.S.A. 48:2-21(b); In re Intrastate *209 Industrial Sand Rates, 66 N.J. 12, 23-24, 327 A.2d 427 (1974); see also FPC v. Texaco, Inc., 417 U.S. 380, 391-92, 94 S.Ct. 2315, 2323-34, 41 L.Ed.2d 141, 153 (1974); Permian Basin Area Rate Cases, 390 U.S. 747, 769-70, 88 S.Ct. 1344, 1361, 20 L.Ed.2d 312, 337-38 (1968); FPC v. Natural Gas Pipeline Co., 315 U.S. 575, 585, 62 S.Ct. 736, 742-43, 86 L.Ed. 1037, 1049 (1942); Denver Union Stock Yard Co. v. United States, 304 U.S. 470, 475, 58 S.Ct. 990, 994, 82 L.Ed. 1469, 1475 (1938). A governmentally-fixed rate confining a public utility's return from operations to an amount below the point of confiscation violates due process. Denver Union Stock Yard Co. v. United States, 304 U.S. at 475, 58 S.Ct. at 994, 82 L.Ed. at 1475; United Rys. & Elec. Co. v. West, 280 U.S. 234, 249, 50 S.Ct. 123, 125, 74 L.Ed. 390, 408 (1930). The term "reasonable" is hardly more precise than its antonym, "confiscatory." Although no single formulation has achieved universal acceptance, we have said that to pass constitutional muster the rate must be sufficient to provide for the company's financial security, attract necessary capital, and yield a reasonable return on investment. New Jersey Bell Telephone Co. v. State, 162 N.J. Super. 60, 73-74, 392 A.2d 216 (App.Div. 1978). Determination of what is "reasonable" involves evaluation not only of the interests of the investor but also those of the consumer and the general public sought to be advanced by the regulatory legislation. Hutton Pk. Gardens v. West Orange Town Council, 68 N.J. 543, 570, 350 A.2d 1 (1975). The point we stress here is that rate levels are not offensive to constitutional and statutory standards merely because they fix returns at a lower scale for inefficient operators. Ibid.
Our present inquiry is whether an established inferiority in the service provided by the utility makes a difference in applying the constitutional and statutory precepts. We are convinced that it should. Price and performance are inextricably intertwined. "[T]he caliber of a utility's service need not remain a neutral factor" in deciding what is a reasonable rate of return. D.C. Transit Sys. v. Washington Met. Area Transit Comm'n, 466 F.2d 394, 419 (D.C. Cir.), cert. denied, 409 U.S. 1086, 93 S.Ct. 688, *210 34 L.Ed.2d 673 (1972). Neither the constitution nor our statutes require the public "to pay for the consequences of lazy or inefficient management." In re Board's Investigation of Tele. Cos., 66 N.J. 476, 502-03, 333 A.2d 4 (1975). Superior service commands a higher rate of return as a reward for managerial efficiency, but inferior service deserves less return than normally would be forthcoming. D.C. Transit Sys. v. Washington Met. Area Transit Comm'n, 466 F.2d at 419. The public is entitled to demand that no more money be extracted from it than the services rendered by the utility are reasonably worth. See Smyth v. Ames, 169 U.S. 466, 547, 18 S.Ct. 418, 434, 42 L.Ed. 819, 849, aff'd as modified, 171 U.S. 361, 18 S.Ct. 888, 43 L.Ed. 197 (1898).
We believe that the obligations of the utility and the consumer are interrelated and reciprocal. The utility's responsibility is to "furnish safe, adequate and proper service." N.J.S.A. 48:2-23. The consumer is obliged to pay this service's reasonable worth. But "[g]ood company management is required; honest stewardship is demanded; [and] diligence is expected." In re Board's Investigation of Tele. Cos., 66 N.J. at 495, 333 A.2d 4.
We are also satisfied that the Board has both the authority and the duty to assure that this reciprocity is maintained. The Board has been vested by the Legislature with "general supervision and regulation of and jurisdiction and control over all public utilities" to the extent necessary for fulfilling its statutory mission. N.J.S.A. 48:2-13. Our Supreme Court has characterized this authority as a "sweeping" grant of jurisdiction, In re Public Service Electric & Gas Co., 35 N.J. 358, 371, 173 A.2d 233 (1961), "intended to delegate the widest range of regulatory power over public utilities...." Tp. of Deptford v. Woodbury Terrace Sewerage Corp., 54 N.J. 418, 424, 255 A.2d 737 (1969). The Board's charge extends to the caliber of the utility's operation and service as well as to the financial reasonableness of the rates it charges.
Stripped to its essentials, Valley's argument is that its revenues cannot be permitted to fall below the level of fair return no matter what the circumstances, even if its management is *211 uneconomical and inefficient and its service inadequate. D.C. Transit Sys. v. Washington Met. Area Transit Comm'n, 466 F.2d at 422. We recognize that the policy of the law is to aid utilities to properly function. City of Elizabeth v. Public Utility Comm'rs, 99 N.J.L. 496, 498, 123 A. 358 (E. & A. 1924). We also acknowledge that "[a] starved utility is in no better position to render proper service than a starved horse or a motor car without fuel." Ibid. Nevertheless, if Valley is correct, then it may disregard its public responsibilities at will, yet insist the public pay ever-increasing rates for substandard service. Neither the constitution, nor our statutes, nor common sense require such a result.
Some thirty-six years ago, Judge Goldmann, writing for this court, suggested that denying a rate increase might serve as "the most practical method" of compelling a utility to remedy a long-standing deficiency. Tp. Committee of Lakewood Tp. v. Lakewood Water Co., 54 N.J. Super. 371, 381, 148 A.2d 885 (App.Div. 1959). He went on to note that denial of rate relief should not be employed where the deficiency in service was "due to the company's need for additional revenues for capital expenditures" and where static rates would cause "further deterioration in service." Ibid. In that context, we do not doubt that Valley's plants are sorely in need of capital improvement. However, the administrative law judge and the Board viewed Valley's management as so incompetent and inefficient that it could not be relied upon to undertake and implement the necessary changes even if additional revenues were guaranteed. In light of this finding, which is amply supported by the record, we are satisfied that the course chosen by the Board was eminently reasonable.
Finally, we reject Valley's claim that it was denied procedural due process because no prior order had been issued by the Board compelling the company to improve service. Ratemaking necessarily encompasses an examination and evaluation of the economy and efficiency of the public utility's operations, the adequacy of its service, and the competency of its management. *212 It is disingenuous for Valley to suggest that it lacked notice of the scope of the Board's inquiry.
The remedy selected by the Board was within its discretionary power. We discern no violation of Valley's constitutional or statutory rights.
Affirmed.