295 N.J. Super. 278 (1996)
685 A.2d 11
IN THE MATTER OF ALLEGED VIOLATIONS OF LAW BY VALLEY ROAD SEWERAGE COMPANY, RICHARD H. SCHINDELAR, INDIVIDUALLY, AND AS OFFICER, DIRECTOR AND SHAREHOLDER, AND MARJORIE Z. SCHINDELAR, INDIVIDUALLY AND AS OFFICER AND DIRECTOR.
STATE OF NEW JERSEY, BOARD OF PUBLIC UTILITIES, PLAINTIFF-RESPONDENT,
v.
VALLEY ROAD SEWERAGE COMPANY, A NEW JERSEY PUBLIC UTILITY, RICHARD H. SCHINDELAR, INDIVIDUALLY AND AS OFFICER, DIRECTOR AND SHAREHOLDER, AND MARJORIE Z. SCHINDELAR, INDIVIDUALLY AND AS OFFICER AND DIRECTOR, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1996.
Decided November 8, 1996.
*283 Before Judges BAIME, PAUL G. LEVY and BRAITHWAITE.
*284 Michael E. Rodgers argued the cause for appellants (Pinto, Rodgers & Kopf, attorneys; Mr. Rodgers, on the brief).
Sarah H. Steindel, Deputy Attorney General, argued the cause for respondent New Jersey Board of Public Utilities (Peter Verniero, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Elise W. Goldblat, Deputy Attorney General, of counsel; Ms. Steindel, on the brief).
Anthony Francioso, Deputy Public Advocate, argued the cause for respondent Division of the Ratepayer Advocate (Blossom A. Peretz, Ratepayer Advocate, attorney; Menasha J. Tausner, Deputy Public Advocate, on the brief).
Frank N. Yurasko argued the cause for respondent Township of Hillsborough.
The opinion of the court was delivered by BAIME, J.A.D.
These consolidated appeals arise from a decision of the Board of Public Utilities (BPU) revoking the franchise and operating authority of Valley Road Sewerage Company (Valley) and barring Richard and Marjorie Schindelar from owning, operating or managing any New Jersey public utility, and from an order of the Chancery Division appointing a receiver with the authority to sell the utility. We hold that the BPU had the power to revoke Valley's franchise, to compel the Schindelars to divest themselves of any interest in the company, and to debar them from owning or managing any New Jersey public utility. We also conclude that the Chancery Division had the authority to appoint an equitable receiver to sell the utility and to operate the company pending the sale.

I.
On August 21, 1992, Valley applied to the BPU for a rate increase. The application was referred to the Office of Administrative Law as a contested case. Following extensive hearings, *285 the administrative law judge issued an initial decision in which he recommended denying Valley's application. Citing years of financial mismanagement and substantial environmental problems, the judge concluded that the utility's manager and owner, Richard Schindelar, and its director, Marjorie Schindelar, could not be relied upon to apply the requested additional revenues to the difficulties besetting the company. The BPU adopted the judge's factual findings, denied Valley's rate application, and ordered that proceedings be conducted to determine whether Valley's operating authority should be revoked.
Following additional hearings, the BPU rendered its decision on November 4, 1994, reaffirming its prior findings of gross mismanagement and rejecting a "business plan" advanced by Valley and the Schindelars. The BPU directed that (1) Valley's franchise and operating authority be revoked, effective upon appointment of a receiver, (2) the Schindelars be barred from owning, operating or managing any New Jersey public utility, and (3) Valley and the Schindelars be prohibited from selling, assigning, leasing, or encumbering the utility's property without the BPU's prior written approval. The BPU also authorized the Attorney General to initiate appropriate legal proceedings for appointment of a receiver to operate the utility and to negotiate its sale to a qualified entity subject to the approval of the BPU and the court.
On December 2, 1994, the Chancery Division issued an order to show cause why a receiver should not be appointed to carry out the BPU's decision. Judge Diana issued an extensive letter opinion on April 18, 1995. The judge denied the request of Valley and the Schindelars for a de novo hearing and accepted the factual findings made by the BPU. The judge further determined that the Chancery Division had the authority to appoint an equitable receiver with the power to operate Valley's business and to negotiate the sale of the company to a qualified purchaser. In subsequent proceedings, the judge rejected the Schindelars' argument that the receiver was required to obtain the "highest possible" sales price. The judge concluded instead that the receiver's *286 mandate was to operate Valley in such a way as to provide "safe, adequate and proper service" to its customers and to negotiate a commercially reasonable sale.
This appeal followed. In their challenge to the BPU's decision, appellants contend (1) the administrative agency's factual findings were erroneous, (2) the BPU was not empowered to compel the sale of Valley and the divestment of the Schindelars' interests, and (3) the decision reached by the agency was arbitrary and capricious. In their attack upon the Chancery Division's order, appellants claim (1) they were entitled to a de novo hearing, (2) the court lacked the authority to appoint a custodial receiver, (3) the court was duty-bound to consider less burdensome and intrusive remedies, and (4) the court mischaracterized the receiver's obligation. We reject these arguments.

II.
We first consider appellants' contentions respecting the BPU's decision. Initially, we discern ample factual support in the record for the BPU's findings relating to Valley's history of financial and environmental mismanagement. The salient facts are recounted at length in our earlier opinion affirming the BPU's denial of Valley's application for rate relief, In re Valley Road Sewerage Co., 285 N.J. Super. 202, 666 A.2d 992 (App.Div. 1995), and need not be repeated here. We merely reiterate our conclusion that "the hearing transcripts fairly reek of chronic corporate mismanagement resulting in the company's abysmal failure to furnish adequate service to its customers." Id. at 208, 666 A.2d 992. We reject Valley's assertion that its activities did not cause severe environmental problems. We also find disingenuous the Schindelars' claim that the BPU should have ignored Valley's failure to pay long overdue gross receipts and franchise taxes merely because tax returns were filed with the State. Suffice it to say, the BPU's findings regarding these factual issues are "supported by substantial credible evidence present in the record as a whole" and cannot fairly be challenged. Henry v. Rahway State *287 Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980); Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 92-93, 312 A.2d 497 (1973); Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965).
Equally unpersuasive is appellants' contention that the BPU erred by rejecting its proffered reorganization plan. We see no need to discuss the plan in detail except to say it involved the Schindelars' promise to engage outside consultants and to resolve Valley's environmental and financial problems without the need to burden its customers. We merely note that there was no evidence the plan would ultimately improve the company's access to traditional sources of capital or otherwise solve its massive management problems. The BPU's rejection of the plan was not arbitrary and capricious. See New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-63, 384 A.2d 795 (1978); see also A.A. Mastrangelo, Inc. v. Department of Envtl. Protection, 90 N.J. 666, 683-84, 449 A.2d 516 (1982); In re Health Care Admin. Bd., 83 N.J. 67, 79, 415 A.2d 1147, cert. denied, 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980).
We turn to appellants' claim that the BPU was not empowered to revoke Valley's franchise and require the Schindelars to divest themselves of ownership and management of the company. We conclude that the BPU acted within its statutory authority.
The BPU is charged with regulating the operation of all public utilities in New Jersey. The metes and bounds of its powers are well settled. Under the terms of the BPU's enabling statute, it is vested with "general supervision and regulation of and jurisdiction and control over all public utilities ... and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions" of the statute. N.J.S.A. 48:2-13. Our Supreme Court has characterized this statute as a "sweeping" grant of jurisdiction "intended to delegate the widest range of regulatory power over public utilities." Township of Deptford v. Woodbury Terrace Sewerage Corp., 54 N.J. 418, 424, 255 A.2d 737 (1969); In re Public Serv. Elec. & Gas Co., 35 N.J. 358, 371, 173 A.2d 233 (1961). Every *288 public utility in this state is required to provide service to its customers that is safe, proper and adequate. N.J.S.A. 48:3-3a. The Board is empowered to require that utilities fulfill that mission "in a manner that tends to conserve and preserve the quality of the environment and prevent the pollution of the waters, land and air of this State." N.J.S.A. 48:2-23.
In the discharge of its statutory duty, the Board's power to revoke franchises that it previously approved is unquestioned. Township of Deptford, 54 N.J. at 425, 255 A.2d 737. While we have found no statute expressly conferring upon the BPU the power to bar owners and managers of regulated utilities from the public utility business, we are satisfied that agency did not improperly arrogate that authority, as argued by appellants. The authority of an administrative agency is not limited to that which is expressly granted. It also encompasses those implied powers which are reasonably necessary or appropriate to fully effectuate the legislative intent. Department of Labor v. Titan Constr. Co., 102 N.J. 1, 10-11, 504 A.2d 7 (1985); A.A. Mastrangelo, Inc. v. Department of Envtl. Protection, 90 N.J. at 683, 449 A.2d 516; New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. at 562, 384 A.2d 795; In re Scioscia, 216 N.J. Super. 644, 655, 524 A.2d 855 (App.Div.), certif. denied, 107 N.J. 652, 527 A.2d 471 (1987). The grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities. We are thus obliged to readily imply such incidental powers as are necessary to fully effectuate the legislative design. Department of Labor v. Titan Constr. Co., 102 N.J. at 11, 504 A.2d 7. Thus, the absence of express statutory authorization will not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the underlying statutory policy. A.A. Mastrangelo, Inc. v. Department of Envtl. Protection, 90 N.J. at 683-84, 449 A.2d 516.
We perceive no merit in the Shindelars' claim that debarment constitutes a manifestly excessive penalty absent a *289 criminal conviction.[1] In determining whether to grant authority to operate a public utility, the BPU is not restricted to examining the entity itself. Clearly implicit in the statutory scheme is the duty of the BPU to consider the qualifications of anyone who may own, operate, manage or control a utility. In re Scioscia, 216 N.J. Super. at 656-57, 524 A.2d 855. The absence of a criminal conviction does not provide an open-sesame for the perpetuation of gross mismanagement. There is no mandate that public utility customers be served by those acting a hair's breadth away from criminality. We do not suggest that the Schindelars' conduct was criminal. However, we point to the administrative law judge's statement that Valley's decline, especially its failure to pay overdue taxes, was the "most egregious example[] of corporate mismanagement [he] had [ever] witnessed." In re Valley Rd. Sewerage, 285 N.J. Super. at 208, 666 A.2d 992. Against this backdrop, we cannot fairly say that the BPU erred by refusing to give the Schindelars a second chance. The BPU had the power to compel the Schindelars to divest themselves of their interest in Valley, and properly exercised that authority in this case.

III.
We next examine appellants' attack upon the Chancery Division's appointment of a receiver. We first consider appellants' contention that they were entitled to a de novo hearing. In denying appellants' request, Judge Diana reasoned that he was barred by our rules of practice from considering the validity of the BPU's decision to revoke Valley's franchise and to debar the Schindelars and was bound to accept the administrative agency's findings of fact. We agree.
*290 Rule 4:67-6 governs the conduct of summary proceedings in the Chancery and Law Divisions for the enforcement of orders issued by administrative agencies. The rule applies to "all actions by a state administrative agency ... brought to enforce a written order or determination entered by it, whether final or interlocutory, and whether the order to be enforced requires the payment of money or imposes a non-monetary requirement or includes a combination of monetary and non-monetary remedies." R. 4:67-6(a)(1). R. 4:67-6(c)(3) provides that, except when the order to be enforced is governed by R. 1:9-6 (subpoenas and discovery), "the validity of an agency order shall not be justiciable in an enforcement proceeding." As noted by Judge Pressler, "[t]he general design of the rule is to vest the trial divisions of the Superior Court with broad jurisdiction to deal with enforcement proceedings, required to be initiated by way of a summary action, but to preserve fully the exclusive jurisdiction of the Appellate Division to review the merits of state agency determinations pursuant to R. 2:2-3(a)(2)." Pressler, Current N.J. Court Rules, comment on R. 4:67-6 (1997).
As Judge Diana perceptively observed, the BPU's complaint seeking the appointment of a receiver was essentially an action brought to enforce its order revoking Valley's operating authority, removing the Schindelars from management and ownership of Valley, and barring them from future participation in the business of any New Jersey utility. Absent a receiver to manage Valley's day-to-day operations pending its sale, the BPU could not remove Valley's current management without closing the company. Ordering Valley to cease operations was not feasible, however, because it would have left Valley's customers without sewer utility service. By the same token, appointment of a fiduciary was necessary to enforce the Board's determination that Valley be sold.
Thus, the judge correctly determined that the question whether he should appoint a receiver hinged on the evidentiary soundness and legal validity of the BPU's determinations that *291 Valley's management be removed and its assets sold. Rule 4:67-6(c)(3) plainly precluded the judge from passing on the validity of the agency's decision; only this court has the authority to review the merits of State agency action. Nor are Valley's rights prejudiced by this procedural scheme. Were we to conclude that the agency exceeded its authority by ordering Valley's sale and the removal of its management, then the legal basis underlying the Chancery Division's appointment of a receiver would disappear, and the judge's order would have to be vacated. Short of such a reversal, the judge was required to enforce the BPU's order.
Judge Diana's acceptance of the factual findings made by the BPU was also correct. As explained by our Supreme Court in Boss v. Rockland Elec. Co., 95 N.J. 33, 468 A.2d 1055 (1983):
where the resolution of a contested legal issue properly brought before a court necessarily turns on factual issues within the special province of an administrative agency, the court should refer the factual issues to that agency. The trial court should accept the factual determinations of the agency and lay them against the legal issues to be resolved and enter its final judgment resolving the mixed questions of law and fact based upon the agency fact finding.
[Id. at 42, 468 A.2d 1055.]
Contrary to appellants' argument, this doctrine is not based on collateral estoppel. Rather, it rests on judicial recognition of the appropriate allocation between courts and administrative agencies of adjudicatory jurisdiction over particular issues.
We are thus unpersuaded by appellants' argument that because the BPU faced a heavier burden of proof in seeking the appointment of a receiver by the Chancery Division, see Sarner v. Sarner, 62 N.J. Super. 41, 59, 162 A.2d 117 (App.Div. 1960) (requiring "imposing and persuasive supporting proof"), than it did in the administrative proceeding, see Atkinson v. Parsekian, 37 N.J. 143, 149, 179 A.2d 732 (1962) (requiring "a preponderance of the believable evidence"), the judge was bound to find the facts anew. The question of whether appointment of a receiver was necessary focused upon inquiry into Valley's record of performance. As the principal agency charged with regulating public utilities, the BPU *292 was uniquely situated to resolve that question. Judge Diana correctly deferred to the BPU's factual findings.
Equally unavailing is the appellants' argument that the Chancery Division did not have the authority to appoint an equitable receiver. We recognize the distinction between statutory and equitable receivers, see Rothman v. Harmyl Inn, 61 N.J. Super. 74, 84-87, 160 A.2d 148 (App.Div. 1960), and acknowledge that there were no grounds for appointment of a statutory receiver. See N.J.S.A. 14A:14-2(2). We further recognize that appointment of an equitable receiver is generally pendente lite, as ancillary to some other claim for relief. See, e.g., Lippmann v. Hydro-Space Technology, 77 N.J. Super. 497, 506, 187 A.2d 31 (App.Div. 1962). Thus, it has been said that "the appointment of [an equitable] receiver is never an appropriate end of any litigation in and of itself." Sarner v. Sarner, 62 N.J. Super. at 59, 162 A.2d 117; see also William M. Fletcher, Cyclopedia of the Law of Private Corporations § 7683 (perm. ed. rev. vol. 1989). This much conceded, the Chancery Division did not violate this doctrine. Appointment of a receiver was not the ultimate relief sought. See Rothman v. Harmyl Inn, 61 N.J. Super. at 85-87, 160 A.2d 148. The verified complaint filed with the Chancery Division stated very clearly that appointment of a receiver was necessary to implement the BPU's decision to revoke Valley's franchise and to divest the Schindelars of their interests in the company. We are convinced that the Chancery Division had the authority to appoint a receiver for this purpose. See State v. East Shores, Inc., 131 N.J. Super. 300, 310, 329 A.2d 585 (Ch.Div. 1974).
We also find nothing amiss in the extent of the powers granted to the receiver. Our courts have long recognized the inherent authority of an equity court to sell assets within the custody of a court-appointed receiver. In Sullivan v. James Leo Co., 124 N.J. Eq. 317, 326, 1 A.2d 400 (E. & A. 1938), the Court of Errors and Appeals stated that the power of the court to sell property in its custody free and clear of liens, often exercised in bankruptcy proceedings, was also "regarded and treated as being inherent in the court of chancery where it has been and is now *293 often exercised." The same principle was stated in Wilkinson, Gaddis Co. v. Shannon Lodge Sanitorium, 132 N.J. Eq. 591, 593, 29 A.2d 631 (Ch. 1943), and J.W. Pierson Co. v. West Orange-Verona Bldg. Co., 112 N.J. Eq. 426, 427, 164 A. 567 (Ch. 1933). Similarly, in Taylor v. Phox Bus Co., 129 N.J. Eq. 610, 20 A.2d 343 (E. & A. 1941), the Court of Errors and Appeals relied in part on general equitable principles in support of the court's authority to order a receiver to sell all or part of the assets of an insolvent corporation "when the interests of the parties demand it." Id. at 615, 20 A.2d 343 (citing 4 Pomeroy Equity Jurisprudence, § 1630).
Contrary to appellants' argument, we know of no doctrine requiring the Chancery Division to consider less burdensome or less intrusive remedies. Nor are we aware of any rule that would require the receiver to assure that the "highest possible net sales price" be obtained. Clearly, this case implicates important public policy concerns that require consideration of the consumers' interests. We thus perceive no basis to disturb the Chancery Division's order.
Affirmed.
NOTES
[1] The BPU's debarment order purports "permanently" to prevent the Schindelars from owning or managing "any" public utility. The essence of appellant's contention is that the Schindelars cannot be debarred from owning or managing Valley Road Sewerage. They do not specifically claim that the debarment order is overly broad because it precludes them from owning "any" public utility. We thus have no occasion to address that issue.