729 A.2d 1056

THE MEDICAL SOCIETY OF NEW JERSEY, AND W.C., M.D., PLAINTIFFS–APPELLANTS, v. BERNARD ROBINS, M.D., IN-DIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PRESI-DENT OF THE NEW JERSEY STATE BOARD OF MEDICAL EXAMINERS; ELEANOR BERNSTEIN, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A DEPUTY ATTORNEY

GENERAL OF THE STATE OF NEW JERSEY; THE NEW JERSEY STATE BOARD OF MEDICAL EXAMINERS; THE DIVISION OF CONSUMER AFFAIRS OF THE NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY; THE DIVISION OF LAW OF THE NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY; THE NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY; THE STATE OF NEW JERSEY; AND "JOHN AND JANE DOES 1–20" WHOSE REAL IDENTITIES ARE AT THIS TIME UNKNOWN TO THE PLAINTIFFS, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 24, 1999—Decided June 1, 1999.

588

Before Judges STERN, LANDAU and BRAITHWAITE.

*Steven I. Kern* argued the cause for appellants (*Kern Augustine Conroy & Schoppmann,* attorneys; *Mr. Kern,* of counsel; *Mr. Kern, P.W. Armstrong* and *Bonnie M. Weir,* on the briefs).

*Douglas J. Harper,* Deputy Attorney General, argued the cause for respondents (*Peter Verniero,* Attorney General, attorney; *Jeffrey Burstein,* Senior Deputy Attorney General, of counsel; *Mr. Harper* and *Eleanor G. Bernstein,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

This case questions the constitutionality of an administrative "demand" to "inspect" the office of W.C., a medical doctor, as a result of information received by the Board of Medical Examiners (Board) that the doctor was distributing outdated medication. The written "Demand for Inspection of Professional Premises" was issued by the Attorney General on September 27, 1997 after the Board requested that the inspection be conducted. It authorized an inspection of W.C.'s office and records by the Enforcement Bureau of the Division of Consumer Affairs "during business hours." W.C. did not honor the demand, however, and plaintiffs' efforts to challenge it before the Board were unsuccessful. The Board's final decision and order, filed December 26, 1997, imposed sanctions for violation of its duty to cooperate regulation. The sanctions were "stayed" to permit compliance; [1] plaintiffs' efforts

---

[1] In its "final decision and order" of December 25, 1997 the Board ordered that:

> Dr. W.C. shall pay a monetary penalty of $1,000 for her violation of the Duty to Cooperate regulation. This penalty will be stayed in its entirety if access

to obtain a judicial stay were denied, and on January 28, 1998, the Board amended its order to require that W.C. "shall fully cooperate with" the inspection "[n]o later than February 6, 1998."

We dismiss this appeal as moot. We were advised at oral argument that the Board of Medical Examiners vacated the $1,000 penalty imposed because Dr. W.C. complied with the administrative demand on February 6, 1998. The defendants have also indicated to us that no sanctions would be imposed. That being so and there being no potential evidence to suppress, we see no justiciable controversy for resolution in this matter transferred to us prior to plaintiffs' compliance with the demand. *See Oxfeld v. New Jersey Bd. of Educ.*, 68 *N.J.* 301, 303–04, 344 *A.*2d 769 (1975); *Cinque v. New Jersey Dept. of Corrections*, 261 *N.J.Super.* 242, 243, 618 *A.*2d 868 (App.Div.1993).[2]

In light of the arguments of the parties and the general "public importance" of the subject matter, *Oxfeld, supra*, 68 *N.J.* at 303, 344 *A.*2d 769, however, we have no hesitation in adding the following.

---

to the premises, licenses, job descriptions, record, books, appointment books, documents, billing records and equipment as required by the Demand [for Inspection of Professional Premises issued by the Attorney General on September 25,1997] and by this Order is afforded within 30 days of the date of the oral announcement of this order on the record [which was on December 10, 1997].

[2] The Chancery Division properly transferred the case challenging the Board's action to this court, *see, e.g., In re Valley Road Sewerage Co.*, 295 *N.J.Super.* 278, 685 *A.*2d 11 (App.Div.1996), *aff'd*, 154 *N.J.* 224, 712 *A.*2d 653 (1998), prior to the February 6, 1998 administrative inspection. This is a different case than *In re Vornado, Inc.*, 159 *N.J.Super.* 32, 386 *A.*2d 1342 (App.Div.), *certif. denied*, 77 *N.J.* 489, 391 *A.*2d 503, 504 (1978), relied upon by plaintiffs, which involved an enforcement proceeding. *See also Pascucci v. Vagott*, 71 *N.J.* 40, 52–53, 362 *A.*2d 566 (1976); *In re A–1 Jersey Moving & Storage, Inc.*, 309 *N.J.Super.* 33, 42, 706 *A.*2d 752 (App.Div.1998); *R.* 2:2–3(a)(2); *R.* 1:13–4(a). In light of our disposition, we have no need to consider any issue of the Medical Society's standing to proceed as a plaintiff. *In re Martin*, 90 *N.J.* 295, 308–10, 447 *A.*2d 1290 (1982).

The constitutional issue posed by this case has, in our view, been substantially resolved for future similar circumstances by the adoption of *N.J.A.C.* 13:35–7.5(b) after the administrative demand was initially made.[3] That regulation specifically provides that "[a] practitioner shall not maintain" outdated medication, and *N.J.S.A.* 45:1–18 expressly authorizes an administrative search based on finding a violation of a specific regulation. *See also N.J.S.A.* 45:1–14, –15, –17 (placing the Board of Medical Examiners within the Division of Consumer Affairs and giving the Attorney General enforcement powers).

■ There can be no doubt that the medical profession is highly regulated. *See, e.g., In re Polk,* 90 *N.J.* 550, 566, 449 *A.*2d 7 (1982); *N.J.S.A.* 45:9–1 *et seq.; N.J.A.C.* 13:35–1 *et seq.* Licensure to practice medicine is required, follows extensive education, and is subject to the rules and regulations of the Board of Medical Examiners. *Id.* Thus, an administrative search as part of a comprehensive statutory scheme to assure compliance with specific regulations governing the profession is authorized by *New York v. Burger,* 482 *U.S.* 691, 107 *S.Ct.* 2636, 96 *L.Ed.*2d 601 (1987).

> An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home. *See Donovan v. Dewey,* 452 *U.S.* 594, 598–99, 101 *S.Ct.* 2534, 2537–38, 69 *L.Ed.*2d 262, 268–69 (1981). This expectation is particularly attenuated in commercial property employed in "closely regulated" industries. The Court observed in *Marshall v. Barlow's, Inc.:* "Certain industries have such a history of government oversight that no reasonable expectation of privacy, *see Katz v. United States,* 389 *U.S.* 347, 351–52, [88 *S.Ct.* 507, 511–12, 19 *L.Ed.*2d 576] (1967), could exist for a proprietor over the stock of such an enterprise." 436 *U.S.* 307, 313, 98 *S.Ct.* 1816, 1821, 56 *L.Ed.*2d 305, 312 (1978).
>
> [*New York v. Burger, supra,* 482 *U.S.* at 700, 107 *S.Ct.* at 2642, 96 *L.Ed.*2d at 612.]

Hence, there is a "reduced expectation of privacy by the owner of commercial premises in a 'closely regulated' industry." *Id.* at 701, 107 *S.Ct.* at 2643, 96 *L.Ed.*2d at 613; *see also Donovan v. Dewey,*

---

[3] The parties agree that the regulation was not in effect at the time the demand issued and the 1997 searches were attempted. The regulation was apparently adopted effective November 3, 1997. In any event, it was not referred to in the demand or in the Board's opinion as a basis for upholding the demand.

452 *U.S.* 594, 598–600, 101 *S.Ct.* 2534, 2537–39, 69 *L.Ed.*2d 262, 268–70 (1981); *United States v. Biswell,* 406 *U.S.* 311, 316, 92 *S.Ct.* 1593, 1596, 32 *L.Ed.*2d 87, 92 (1972); *Colonnade Corp. v. United States,* 397 *U.S.* 72, 76–77, 90 *S.Ct.* 774, 776–77, 25 *L.Ed.*2d 60, 64 (1970).

Because the owner or operator of commercial premises in a "closely regulated" industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search . . . have lessened application in this context. Rather, we conclude that, as in other situations of "special need," . . . where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment.

This warrantless inspection, however, even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. . . .

Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." . . .

Finally, "the statute's inspection program, in terms of the certainty and regularity of its application [must] provid[e] a constitutionally adequate substitute for a warrant." [*Donovan v. Dewey,* 452 *U.S.* at 603, 101 *S.Ct.* at 2534, 69 *L.Ed.*2d at 272]. In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. . . . To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Donovan v. Dewey,* [452 *U.S.* at 600, 101 *S.Ct.* at 2539, 69 *L.Ed.*2d at 270]. In addition, in defining how a statute limits the discretion of the inspectors . . . it must be "carefully limited in time, place, and scope." *United States v. Biswell,* [406 *U.S.* at 315, 92 *S.Ct.* at 1596, 32 *L.Ed.*2d at 92].

[*New York v. Burger, supra,* 482 *U.S.* at 702–03, 107 *S.Ct.* at 2643–44, 96 *L.Ed.*2d at 613–14.] [4]

[4–6] Under *Burger,* police officers can conduct a warrantless search of a junkyard to look for stolen vehicles and parts after the

---

[4] There is no claim that the New Jersey Constitution gives greater protection than the federal constitution or that there is some independent state law governing administrative searches. *See, e.g., In re Martin,* 90 *N.J.* 295, 310–14, 447 *A.*2d 1290 (1982).

owner indicates he has no license or records which are required by statute. Similarly, the search of a doctor's office "during business hours" (as here limited by the September 25, 1997 demand) for professional records needs no warrant under the test announced by the *Burger* majority. Inspections by the Division of Consumer Affairs for outdated medication or records relating to dispensing of same following receipt by the Board of Medical Examiners of evidence of such dispensing and the Board's specific authorization of a search to ascertain if the doctor was dispensing such medication (as was ordered in this case) cannot be deemed *per se* unlawful. Whether there is sufficient evidence before the Board, whether its findings are sufficiently made of record and whether the administrative demand is sufficiently tailored in terms of time, place and scope, *see Burger, supra,* 482 *U.S.* at 703, 107 *S.Ct.* at 2644, 96 *L.Ed.*2d at 614; *United States v. Biswell,* 406 *U.S.* 311, 315–16, 92 *S.Ct.* 1593, 1596, 32 *L.Ed.*2d 87, 92 (1972), depends upon the facts of the particular case. As this case is moot, we need not address whether the demand in this case was too broad.

We read nothing in *Burger* or the other United States Supreme Court cases which prohibit the legislature from delegating to an administrative agency the authority to adopt regulations which satisfy the constitutional three prong test announced in *Burger. See, e.g., State v. Turcotte,* 239 *N.J.Super.* 285, 294, 571 *A.*2d 305 (App.Div.1990); *State v. Dolce,* 178 *N.J.Super.* 275, 284–85, 428 *A.*2d 947 (App.Div.1981) (finding that the administrative regulations do not violate Fourth Amendment standards). *See also In re Martin,* 90 *N.J.* 295, 310–14, 447 *A.*2d 1290 (1982).[5] The Board of Medical Examiners has now adopted regulations which make clear that maintenance and dispensing of outdated drugs is prohibited, and the Legislature has expressly authorized "inspect[ion of]

---

[5] We find nothing in *Burger* or any other case which requires the statute to be profession-specific or which requires that a statute must relate specifically to a single profession, provided that the Legislature has delegated regulatory power to the agency which conducts an administrative search. We do not herein address the power of any other agency affected by *N.J.S.A.* 45:1–18 to conduct an administrative search.

any premises" of a licensed professional for "any act or practice declared unlawful by a statute or regulation administered by such board." *N.J.S.A.* 45:1–18(c) (alteration added).[6] Hence, where the Board finds a specific violation of a regulation by a provider of health care services under its jurisdiction has occurred, or that there is a factual basis "in the public interest to inquire whether any such violation may exist," a sufficiently detailed administrative demand (or warrant) specifying the legal authority for the demand and its limitations as to time, place and scope would pass constitutional muster.[7] *See, e.g., Greenblatt v. New Jersey Bd. of Pharmacy,* 214 *N.J.Super.* 269, 276–77, 518 *A.*2d 1116 (App.Div.1986) (rejecting a claim that "warrantless search and seizures permitted by *N.J.S.A.* 45:14–15 and *N.J.S.A.* 45:1–18c, d and e are violative of the Fourth, Fifth and Fourteenth Amendments to the federal constitution").

As the matter before us is moot by virtue of both the lack of sanctions in this case and adoption of a new regulation governing the conduct in question, we do not address the propriety of the September 30, 1997 and October 30, 1997 visits to Dr. W.C.'s office and the events surrounding them. We recognize that plaintiff's complaint seeks relief under 42 *U.S.C.* § 1983, that such claims may be cognizable in the Law Division, and that the parties have not addressed the impact of our conclusion on that aspect of the

---

[6] Thus, the statute puts the regulated industry on notice of the ability to conduct an administrative search. *See Donovan v. Dewey, supra,* 452 *U.S.* at 605–06, 101 *S.Ct.* at 2541–42, 69 *L.Ed.*2d at 273. *See also, e.g., State v. Stroger,* 97 *N.J.* 391, 403, 478 *A.*2d 1175 (1984), *cert. denied,* 469 *U.S.* 1193, 105 *S.Ct.* 971, 83 *L.Ed.*2d 974 (1985).

[7] The statute would have to be honored; only the Board can authorize the search and only Division of Consumer Affairs or Attorney General enforcement officers could conduct it. The warrantless search would be conducted to assure compliance with the provisions of Title 45 and its implementing regulations, not to gather evidence of crime, *State v. Williams,* 84 *N.J.* 217, 222–27, 417 *A.*2d 1046 (1980), even though the discovery of evidence of crime during an otherwise valid administrative inspection need not necessarily be suppressed. *State v. Rednor,* 203 *N.J.Super.* 503, 507–09, 497 *A.*2d 544 (App.Div.1985). *See also State v. Stroger, supra,* 97 *N.J.* at 403–04, 410–13, 478 *A.*2d 1175.

case. We, therefore, remand the matter to the Law Division, Essex County, for any further proceedings plaintiff W.C. may endeavor to pursue on the § 1983 claim which technically remains pending. *See Maisonet v. Department of Human Serv.*, 140 *N.J.* 214, 226–28, 657 *A.*2d 1209 (1995). In so doing, we recognize the limited ability to proceed against State officials under § 1983, *see, e.g., Hafer v. Melo,* 502 *U.S.* 21, 25–31, 112 *S.Ct.* 358, 361–65, 116 *L.Ed.*2d 301, 309–13 (1991), and do not intimate any view on the ability to proceed or on the merits of any claim.

So ordered.