915 A.2d 1105

GLEN REILLY, PETITIONER–APPELLANT, v. AAA MID–
ATLANTIC INSURANCE COMPANY OF NEW
JERSEY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 8, 2007—Decided February 16, 2007.

Before Judges S.L. REISNER, SELTZER and C.L. MINIMAN.

*Glen Reilly,* argued the cause pro se.

*Donald M. Barone,* argued the cause for respondent AAA Mid–Atlantic Insurance Company (*Gelfand, Selem & Barone,* attorneys; *Mr. Barone,* on the brief).

*Vicki A. Mangiaracina,* Deputy Attorney General, argued the cause for respondent New Jersey Commissioner of Banking and Insurance (*Stuart Rabner,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Denise M. Illes,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

S.L. REISNER, J.A.D.

This case concerns the definition of an "at-fault" accident for purposes of assessing eligibility points for automobile insurance, pursuant to *N.J.S.A.* 17:33B–14 and *N.J.A.C.* 11:3–34.3. We affirm the final decision of the Department of Banking and Insurance that Glenn Reilly was properly assessed five points for a one-car weather-related accident, but we conclude that the Department must revise its regulations prospectively to define the term "at-fault" and clarify its application to one-car accidents.

I

This case arose when Reilly's insurer, AAA Mid–Atlantic Insurance Company of New Jersey (AAA), refused to renew his insurance because Reilly had amassed seven eligibility points, the threshold at which an insurer can deny coverage. Reilly appealed the decision to the Commissioner of Banking and Insurance, contending that five of the points should not have been assessed for a one-car accident that occurred during icy weather and that he claimed was not his fault. The Commissioner initially upheld the assessment, and Reilly requested an administrative hearing.

At the hearing, Reilly testified that on the evening of January 2, 2003, he was traveling on Route 15 on his way to his home in West Orange after a skiing trip in Pennsylvania. He was traveling in a line of cars, all of which were going under the speed limit. He testified that it was cold and raining but there was no snow and neither snow nor ice had been predicted. Suddenly, "the back end of the car ... slipped out from behind me ... and I rotated 180 degrees and instantly I was against the barrier, there was no time

to react." Reilly testified that shortly after the police arrived, it began hailing "and the road instantly froze over and traffic basically came to a standstill. So, unfortunately, I was probably the first accident, at least on that section of Route 15 that night." He also introduced in evidence, as hearsay, a *Star–Ledger* article describing the "Black Ice Nightmare" that befell the roads in northern New Jersey that night resulting in hundreds of accidents, although the article did not mention Route 15.

He also testified that Route 15 is a two or three lane highway with a fifty-five mile per hour speed limit, but that on this evening the traffic was moving "very slowly ... about 45 miles per hour." He testified that he was "moving with the herd of cars ... and ... based on the conditions I knew it was a possibility that the rain could turn to ice based on how cold it was." He admitted that other cars traveling in front of him and behind him did not spin out of control on the icy patch on which his car slid. However, he testified that as he was driving home after the accident, he saw many other accidents on other highways.

Reilly was not charged with any moving violations nor was he ticketed as a result of the accident. Apparently, his insurer at the time, State Farm, assessed five points against his insurability as a result of this accident but did not give Reilly notice of the assessment. Consequently, he had no opportunity to challenge the assessment of the points at the time they were assessed. Reilly only found out about the assessment in 2004, when the point limit for insurability in the voluntary market was lowered from nine points to seven and his new insurer, AAA, declined to renew his insurance policy because he had seven points, including the five points for the 2003 accident. When he contacted AAA, he was told that they would only change the five point assessment if he could convince State Farm to change its assessment. Accordingly, Reilly appealed AAA's decision to the Commissioner of Banking and Insurance.[1]

---

[1] *N.J.S.A.* 17:33B–17 provides procedures for resolving denials of automobile insurance, by appeal to the Commissioner followed by a contested case hearing

At the hearing, Reilly claimed that he was not at fault at all for the accident. AAA's attorney conceded "that we have to show that he's 50 percent or more" at fault. In an effort to address the issue of fault, AAA presented the testimony of an underwriter, Danielle Sease. She testified that she relied on an underwriting manual that defined "at-fault accident." She contended that she reviewed the police report of the accident and the application and reached an "independent judgment it was an at-fault accident." However, the ALJ did not find this testimony credible.

Sease also explained the general principle, from the insurer's perspective, that "when you get behind the wheel of a vehicle you are responsible to keep control of that vehicle at all times.... [T]he bottom line is he lost control of his vehicle and collided with something else." Additionally, the accident caused more than one thousand dollars worth of damage. She testified that she considered Reilly one hundred percent at-fault "[b]ecause there's no other car that can contribute any other percentage to." She did concede that in her years as an underwriter she had found "a few" single car accidents not to be "at-fault." She cited as an example an accident in which the insured hit an object left in the roadway by the "[S]tate" and the State "took a hundred percent [responsibility] for it."

The Administrative Law Judge (ALJ) found Reilly credible, found that he was blameless in the accident which occurred solely because of the icy weather, and concluded that the points should be rescinded. The Commissioner accepted the ALJ's credibility determinations, but rejected his legal conclusion. Instead, the Commissioner reasoned that the term "at-fault" accident as used in *N.J.A.C.* 11:3–34.3 "should not be construed solely in the sense of moral culpability or proven violations of traffic regulations, but

---

if the insured disagrees with the Commissioner's decision. The statute is implemented by rules at *N.J.A.C.* 11:3–33.1 to –33.9. Notably, neither this statutory provision nor the rules provide a mechanism by which an insured can contest the assessment of eligibility points at the time the insurer assesses them, if they do not at that time result in a denial of insurance.

with a common sense approach recognizing its applicability in the context of insurance rating." Hence, absent certain narrow exceptions set forth in the rule, a one-vehicle accident "such as a collision resulting from a loss of control due to road conditions such as black ice" will be deemed an "at-fault" accident even if the driver was not negligent. Thus, according to the Commissioner

[p]ursuant to *N.J.A.C.* 11:3–34.3, an accident is an "at-fault accident" for which eligibility points should accrue if it: involved a driver insured under the policy; resulted in payment of a claim of $500 or more ... which payment was not recouped from another tortfeasor; is not specifically excepted as set forth in the rule; and the driver is not excused by application of the proportionate responsibility standard [pertaining to multi-car accidents].

Consequently, the Commissioner concluded that Reilly's accident was "at-fault" and coverage was properly denied.

## II

We begin by addressing the issue of mootness. AAA contends that this case is moot, because the five points at issue have expired, and Reilly is not entitled to any further relief from the agency whose decision is on appeal.[2] However, we will not dismiss the case as moot, because it is clear from the oral argument that both Reilly and the Commissioner wish us to decide the case and it concerns a matter of public importance. *See John F. Kennedy Mem'l Hosp. v. Heston,* 58 *N.J.* 576, 579, 279 *A.*2d 670 (1971), *overruled on other grounds by In Re Conroy,* 98 *N.J.* 321, 351, 486 *A.*2d 1209 (1985). Moreover, even if Reilly might be able

---

[2] In his initial appeal to the Department, Reilly sought reimbursement of the difference between the $5000 per year he had to pay for replacement coverage and the $1600 per year he would have paid had AAA renewed his insurance policy. However, at the time of the hearing, and at the time the Commissioner issued his Final Decision on May 17, 2005, the agency's rules did not provide for reimbursement of higher premiums as a remedy. That remedy was not authorized by regulation until July 3, 2006, when the agency adopted *N.J.A.C.* 11:3–33.6(d), which provides that as a discretionary remedy the Commissioner may require an insurer that improperly denies coverage to reimburse a petitioner for the increased cost of obtaining replacement coverage. Reilly has conceded that as of January 3, 2006, the five points assessed for this accident have expired and he is now eligible for coverage in the voluntary market. *See N.J.S.A.* 17:33B–13f.

to seek a monetary remedy in a separate Special Civil Part action (an issue we do not decide here), under principles of primary jurisdiction the central issue in such a case would be one more appropriately decided by the agency charged with enforcing the statute than by a trial court. *See Boss v. Rockland Elec. Co.*, 95 *N.J.* 33, 39–40, 468 *A.*2d 1055 (1983). Hence, even if the Commissioner's ruling did not collaterally estop Reilly's Special Civil Part action, the trial court most likely would defer to the agency's decision in this case as to the meaning of "at-fault accident." All of these factors convince us that we should decide the issue now.

### III

Accordingly, we turn to Reilly's arguments that the Legislature intended the term "at-fault accident" to be understood in terms of driver negligence, and that either the agency's regulation is inconsistent with the statute or the agency is misconstruing its regulation.

The statute at issue was originally enacted in 1990, and was designated as the Fair Automobile Insurance Reform Act, *N.J.S.A.* 17:33B–1 to –64. It requires the Commissioner to adopt regulations assessing eligibility points for at-fault accidents:

> The commissioner shall, within 90 days of the effective date of this act, promulgate a schedule of automobile insurance eligibility points by rule or regulation.... The schedule shall assess a point valuation to driving experience related violations and shall include assessments for violations of lawful speed limits within such increments as determined by the commissioner, other moving violations, *and at-fault accidents.*
>
> [*N.J.S.A.* 17:33B–14 (emphasis added).]

The same section also addresses the concept of an "at-fault accident" without defining the term "at-fault":

> For the purposes of this section, an "at-fault accident," occurring before the effective date of P.L. 2003, c. 89 (C.17:30A–2.1), means an at-fault accident which results in payment by the insurer of at least a $500 claim and for accidents occurring on or after the effective date of P.L. 2003, c. 89 (C.17:30A–2.1), means an at-fault accident which results in payment by the insurer of at least a $1,000 claim ... except that an at-fault accident shall not mean an accident occurring as a result of operation of any motor vehicle in response to a medical emergency if the

operator at the time of the accident was a physician responding to the medical emergency.

[*Ibid.*]

█ It is not unusual for the Legislature to adopt legislation contemplating that its general statutory principles will be given further content by an administrative agency having technical expertise in the subject matter. *See George Harms Constr. Co. v. N.J. Tpk. Auth.*, 137 *N.J.* 8, 33–34, 644 *A.*2d 76 (1994). We conclude that is the case here.

Unfortunately, the regulation is less than clear, because, while it undertakes to define "at-fault accident," it never defines the term "at-fault" and does not specifically address one-car accidents.

"At-fault accident" is any accident involving a driver insured under the policy:

1. Where a driver is proportionately responsible based on the number of vehicles involved. A driver is proportionately responsible if 50 percent responsible for an accident involving two drivers; if 33 1/3 percent responsible for an accident involving three drivers, etc.; and

2. Which results in a total payment by the insurer of at least $500 for an accident occurring before June 9, 2003; or at least $1,000 for an accident occurring on or after June 9, 2003.

[*N.J.A.C.* 11:3–34.3.]

The regulation also defines certain situations that will not be considered at-fault accidents:

An at-fault accident shall not include the following:

1. Involvement in an accident in which the motor vehicle owned or operated by the insured or other driver insured under the policy was lawfully parked;

2. Involvement in an accident in which the motor vehicle was struck by a hit and run driver, if such accident was reported to the proper authorities within 24 hours;

3. Involvement in an accident in connection with which neither the named insured nor any other driver insured under the policy was convicted of a moving traffic violation and the owner or operator of another vehicle involved in such accident was so convicted;

4. For physical damage losses other than collision;

5. For an accident in which the motor vehicle was struck in the rear by another vehicle and a driver insured under the policy has not been convicted of a moving violation in connection with the accident; or

6. For an accident occurring as a result of operation of any motor vehicle in response to an emergency if the operator at the time of the accident was

responding to the call to duty as a paid or volunteer member of any police or fire department, first aid squad or any law enforcement agency.
[*Ibid.*]

However, the rules provide no guidance to insurers as to how to determine whether a one-car accident, like the one in this case, is an at-fault accident. In that connection, we note that AAA's underwriting rules, which are in the record, also do not define "at-fault" or "at-fault accident" and simply incorporate by reference the standards set forth in *N.J.A.C.* 11:3–34.5. *See N.J.A.C.* 11:3–35.1 (requiring automobile insurers to file their underwriting rules with the Commissioner for approval).

Having addressed the regulation's ambiguity, we next turn to whether the Commissioner's interpretation of the regulation and the statute can nonetheless be affirmed in this case.

We have reviewed the legislative history of *N.J.S.A.* 17:33B–14 and find it uninformative, beyond expressing the Legislature's intent that "good" drivers be able to secure insurance in the voluntary market and that they not be required to subsidize insurance for "bad" drivers. Assembly Appropriations Committee, *Statement to Assembly Bill No. 1,* at 2–4 (N.J. Mar. 1, 1990); *see N.J.S.A.* 17:33B–2h(6). The history does not tell us directly, however, whether "good" and "bad" should be defined in traditional negligence terms of duty and fault, or in terms more germane to the insurance industry which would likely define the terms in reference to risk and cost. We infer that the latter construction is more likely correct, since the overall purpose of the legislation was to stabilize and lower insurance rates. *See N.J.S.A.* 17:33B–2(d) (citing "economy" as "one of the principal goals" of the State's comprehensive system of insurance regulation).

Based on Sease's testimony at the hearing in this case and the remarks of AAA's and the Commissioner's attorneys at oral argument, we understand that for insurance industry rating purposes a "bad" driver is one who (a) has been involved in accidents that cost the insurer money that cannot be recouped from other sources (e.g., insurers for other drivers) and (b) based on actuarial

principles, is more likely to be involved in future accidents. Since the overall purpose of the legislation was to stabilize and lower insurance rates and ensure coverage in the voluntary market for good drivers, we find it more likely that the Legislature would have intended the terms "bad driver" and "at-fault accident" to be construed in ratemaking terms as opposed to the way lay persons might understand them. We find some support for this conclusion in the history of the regulation and the agency's construction of the statute.

The regulation at issue was first adopted in 1990. When the rules were originally proposed in 1990, "[s]everal commenters stated that the definition of an 'at[-]fault accident' (*N.J.A.C.* 11:3–34.3) was not clear." 22 *N.J.R.* 3847 (Dec. 17, 1990). Additional comments and responses indicated that the agency intended to leave to the insurance industry the discretion to define "at-fault" for rating purposes, and the agency believed that insurers would apply negligence concepts in their definitions:

> COMMENT: Several commenters objected to the definition of an "at-fault" accident in *N.J.A.C.* 11:3–34.3 because it allows insurers to determine or assess fault.
>
> RESPONSE: Insurers have always made an assessment of fault for evaluating and settling liability claims and thus for underwriting and rating purposes. The proposed new rules provide for the use of an objective criteria for this process.
>
> ....
>
> COMMENT: *One commenter requested that the rule clarify the types of accidents where "at-fault" (that is, negligence) does not apply.* The commenter advised that under current practice, [certain specified types of accidents such as those caused by animals in the road or falling objects] are not considered at-fault accidents ... *The commenter further questioned if there is a standard that insurers use to determine fault. The commenter also questioned if this rule provides that standard.*
>
> RESPONSE: The Department agrees that the rule should include a list of the types of accidents where the driver is clearly not responsible and has revised this section accordingly. *The proposed rule does not include the standard that insurers use to determine fault. Insurers apply a negligence standard to determine fault.*
>
> [*Ibid.* (emphasis added).]

In response to these comments, the agency revised *N.J.A.C.* 11:3–34.3 to specify six types of accidents that would not be

considered "at-fault," including accidents to an insured's parked car and promptly-reported accidents caused by a hit and run driver. But the agency did not revise the rule so as to give insurers any further guidance as to how to apply the term "at-fault."

The agency's comments accompanying amendments to the regulations in 2003 shed some light on the agency's understanding of the statutory purpose to prevent good drivers from subsidizing bad drivers:

> The Act includes many provisions intended to put downward pressure on rates by reducing fraud, providing additional consumer education and protection, as well as by helping to ensure that good drivers don't pay for bad drivers.
>
> [35 *N.J.R.* 3260(a) (July 21, 2003), comments to rule proposal amending *N.J.A.C.* 11:3–34.3 to –34.5.]

Likewise, the comments reflect the cost-based nature of the judgment concerning good and bad drivers:

> The enactment of these amendments will help ensure that good drivers do not pay for bad drivers by ensuring that good drivers pay rates reflective of the actual cost of insuring the vehicles they drive, and that bad drivers, that is, those with more eligibility points, pay rates reflective of the actual cost of insuring the vehicles they drive.
>
> [*Ibid.*]

This concern with cost-based judgments is also reflected in the regulations concerning insurers' underwriting rules. Accordingly, *N.J.A.C.* 11:3–35.3(c)2 provides that "[a]n underwriting rule shall be based on a reasonable and demonstrable relationship between the risk characteristics of the driver(s) insured and the hazards insured against."

Based only on the history of the statute and the regulations, we infer that the agency intended "at-fault" to be understood in ratemaking terms, but that the agency initially expected insurers to consider negligence concepts in defining "fault." However, in reviewing the agency's adjudication of cases under the rule, we find the agency has departed from that approach.

The agency's construction of the regulation was summarized in *Amica Mut. Ins. Co. v. Kern*, 93 *N.J.A.R.*2d 55 (INS):

[I]t is appropriate to comment on the construction of the term "at-fault accident" as defined in the rules. "At-fault accident" is used in *N.J.S.A.* 17:33B–15, but not defined by statute. The statute does provide, however, that an accident should not result in eligibility points unless the insurer pays a claim of at least $500. This element of a chargeable "at-fault accident" is set forth at *N.J.A.C.* 11:3–34.[3], the definitions section of the eligibility points rules. In further defining "at-fault accidents," the rule lists several kinds of accidents that historically have not been considered chargeable accidents in automobile insurance rating. Additionally, the definition of "at-fault accident" includes a concept of proportionate responsibility when the automobile accident involves more than one vehicle. This standard was added to be consistent with the comparative negligence standard applied for tort responsibility, and to avoid penalizing drivers with additional premium charges when their contribution to the cause of an accident is negligible compared to other drivers. These specific criteria should be the focus of any inquiry into whether eligibility points should accrue for an at-fault accident. *The term "at-fault" should not be construed solely in the sense of moral culpability or proved violation of traffic regulations, but with a common sense approach recognizing its applicability in the context of insurance rating.* If the accident involved a driver insured under the policy; resulted in payment of a claim [of] $500 or more which was not recouped from another tortfeasor; is not specifically excepted; and the driver is not excused by application of the proportionate responsibility standard, the accident is an "at-fault accident" for which eligibility points should accrue.

[*Id.* at 58 (emphasis added).]

The agency has consistently followed the view that "at fault" does not include moral culpability or traffic violations, but has in some cases made findings of negligence, although in theory *Amica* would not require such findings. For example, in *Kartikis v. Liberty Mut. Fire Ins. Co.,* 2002 *N.J. Agen Lexis* 1504 (N.J.Adm. Dec. 19, 2002), a driver was involved in a one-car accident when her vehicle slid on black ice. *Id.* at *3. The ALJ concluded that she was not responsible for the accident and that "it was caused by an unforeseen and unforeseeable act of nature." *Id.* at *4. The Commissioner, after invoking the rule that an at-fault accident does not require a finding of moral culpability or a traffic violation, nonetheless went on to find that petitioner "did not keep her vehicle under control and . . . failed to exercise due care under the existing road conditions," a finding theoretically not required if "at-fault" does not require a finding of driver negligence. *Id.* at *4–5. The Commissioner distinguished *Geist v. Selective Ins. Co.,* 96 *N.J.A.R.2d* 75 (INS), where a car hit a stone object that fell or was thrown into his lane of traffic, on the grounds that "losses

caused by missiles or falling objects are not considered to be collisions" for purposes of the at-fault accident rule. *Id.* at *5–6.

Likewise in *Woo v. State Farm Ins. Co.,* 96 *N.J.A.R.*2d 99 (INS), the Commissioner found an "at-fault accident" where the insured's car slid into a snow bank after hitting a patch of ice in very poor road conditions. *Id.* at 101–02. The ALJ concluded that the driver was at fault, based on his conclusion that she should have been driving even more slowly than she was. *Id.* at 101. Additionally, the officer investigating the accident had concluded in his report that she was traveling at an unsafe speed. *Ibid.* The Commissioner adopted the initial decision, but primarily focused not on the "at-fault" issue but on the distinction between points assessed under the insurance regulation and points assessed by the Division of Motor Vehicles for moving violations. *Id.* at 102.

In an unreported decision, *Scarfi v. First Trenton Indem. Co.,* 2005 *N.J. Agen Lexis* 1157 (N.J.Adm. Dec. 8, 2005), the Commissioner confirmed that the term "at-fault" was to be construed as it was in *Amica, supra,* "with a common sense approach recognizing its applicability in the context of insurance rating." *Id.* at *4. Thus, even absent ordinary negligence, a collision resulting from black ice on the roadway could be deemed an at-fault accident. *Id.* at *3–4. In *Lojewski v. Allstate N.J. Ins. Co.,* 2005 *WL* 1805689, 2005 *N.J. Agen Lexis* 973 (N.J.Adm. Apr. 14, 2005), the Commissioner similarly observed, albeit in dicta, that "one-vehicle accidents which may not evidence 'ordinary negligence,' such as a collision resulting from a loss of control due to road conditions such as black ice" may be deemed at-fault accidents, so long as the accident otherwise meets the standards set forth in *N.J.A.C.* 11:3–34.3. *Id.* at *1, 2005 *N.J. Agen Lexis* 973, at *1–2.

In *Aprea v. Selective Ins. Co.,* 2006 *N.J. Agen Lexis* 93 (N.J.Adm. Feb. 1, 2006), the Commissioner followed *Amica, supra,* and observed that the term "at-fault accident" was intended to be interchangeable with the term "chargeable accident" which is used in other states. *Id.* at *8–10. He concluded that in using

the term "at-fault" accident in *N.J.S.A.* 17:33B–14, the Legislature did not intend

> to alter the fundamental intent of [the] legislation, which was to craft a scheme for identifying criteria on the basis of which appropriate decisions could be made by auto insurers with respect to the renewal or nonrenewal of policies based upon insurance rating considerations and not upon the moral culpability of drivers involved in one vehicle accidents.
>
> [*Id.* at *10.]

In *Aprea*, the Commissioner concluded that a one-car collision with a curb, allegedly caused when the insured was cut off by a phantom driver, was nonetheless an at-fault accident. *Id.* at *8.

Reilly relies heavily on *Griner v. Allstate Ins. Co.*, 2001 WL 34595753, 2001 *N.J. Agen Lexis* 1418 (N.J.Adm. Aug. 1, 2001), to support his argument concerning the proper interpretation of the term "at-fault." *Griner* appears somewhat anomalous in applying negligence "fault" concepts, but it also appears to turn on its unique facts and perhaps also on the insurer's failure to file exceptions to the initial decision in petitioner's favor. In *Griner*, the Commissioner construed *N.J.A.C.* 11:3–34.3 as applying the principle of proportional responsibility to drivers involved in one-car accidents, based on the language "for which the driver is at least proportionately responsible based on the number of vehicles involved." *Id.* at *3, 2001 *N.J. Agen Lexis* 1418 at *7. She construed this as meaning that the driver in a one-car accident must be at least 50% liable for the accident. *Id.* at *3, 2001 *N.J. Agen Lexis* 1418 at *8, . However, in *Griner*, the driver was found not at fault at all, because the accident was caused by a flaw in the vehicle itself for which she could not have been responsible, i.e., one of the tires on her rented car suddenly separated from the wheel, causing the car to veer uncontrollably off the road. *Id.* at *2–3, 2001 *N.J. Agen Lexis* 1418 at *2–3, *8. This is not analogous to a one-car weather-related accident and is comparable to *Geist, supra,* in which an unknown third party threw a stone in the path of the driver's car.

▇ We ordinarily "give substantial deference" to the agency's interpretation of a statute entrusted to its enforcement. *Merin v.*

*Maglaki,* 126 *N.J.* 430, 436–37, 599 *A.*2d 1256 (1992). We conclude here that the agency's broad understanding of the Legislature's purpose is correct and its construction of the regulation is not unreasonable. *See id.* at 437, 599 *A.*2d 1256. Moreover, we have previously recognized the propriety of using a driver's past claim history in insurance rating, even if the claims were for non-fault accidents. In *Coalition for Quality Health Care v. New Jersey Department of Banking & Insurance,* 348 *N.J.Super.* 272, 791 *A.*2d 1085 (App.Div.), *certif. denied,* 174 *N.J.* 194, 803 *A.*2d 1165 (2002), we approved the use of insurance rating tiers that took into account a driver's history of personal injury protection (PIP) claims, even if they arose from non-fault accidents. We quote at length from our opinion because it illustrates the essential principles applicable here:

> Appellants contend that allowing incorporation of non-fault accidents into the tier rating process undermines the no fault system by imposing a penalty for exercising entitlement to no fault benefits, thereby resulting in a chilling effect on consumers seeking necessary treatment and submitting their bills under compulsory insurance. *As pointed out by respondents, however, the bottom line test for underwriting propriety does not relate to fault but to whether a criterion constitutes a good predictor for future loss.* Placement of insureds into tiers must be based on objective underwriting criteria, supported by a reasonable and demonstrable relationship between the risk characteristic of the driver and vehicle insured, and the hazard insured against. *N.J.A.C.* 11:3–19A.3(f) and –19A.5(b)(2). *Indeed, criteria are routinely considered in the underwriting process that are unrelated to fault, but serve as reliable predictors of future loss.* These include, for example, age, gender and marital status.

> The DOBI asserts it approved Allstate's use of the non-fault accident criterion because claims experience may serve as an objective predictor of future risk of loss. Because the filing of claims can increase costs and risks, the DOBI concluded Allstate was justified in utilizing this criterion in its tier rating system. The DOBI thus argues that this is an objective underwriting criterion based upon the relationship between the risk and the hazard insured against, because "[o]ne essential aspect of the business of insurance is to predict the statistical occurrence of certain risks of human or business activities." *State Farm Mutual Auto. Ins. Co. v. Department of Pub. Advocate,* 118 *N.J.* 336, 339, 571 *A.*2d 957 (1990). *The DOBI concludes,* therefore, *that because "[e]very consumer of insurance runs a risk of loss," ibid., prior losses can be good predictors of future losses.*

> ... Many factors are considered in tier determination and applicable discounts. This comports with the Legislature's purpose of establishing "a system of rating tiers to provide greater flexibility in evaluating and rating risks based on factors that more accurately reflect the driver's characteristics." *N.J.S.A.* 17:33B–64b(2).

*Use of a prior non-fault accident claim as a predictor of future loss accords with the statutory authorization to include "driving record characteristics appropriate for underwriting and classification." N.J.S.A. 17:29A-46.2a.*
[*Id.* at 321-22, 791 A.2d 1085 (emphasis added).]

 The principles discussed in *Coalition for Quality Health Care* lead us to conclude that we should defer to the agency's construction of the statute and of its own regulation, and hence that we should affirm the agency's decision in this case. *See also Essex County Bd. of Taxation v. Twp. of Caldwell*, 21 *N.J.Tax* 188, 197 (App.Div.) (agency's construction of its own rule is owed "considerable deference"), *certif. denied*, 176 *N.J.* 426, 824 A.2d 156 (2003). A standard imposing virtually automatic fault where an insured is involved in a one-car weather-related accident is not unreasonable or irrational if the "at-fault accident" rule is based on concepts of insurer cost and risk, as opposed to traditional tort concepts of fault. The agency's decision to thus construe the term "at-fault" according to insurance rating standards rather than traditional tort principles is neither unreasonable nor inconsistent with the purpose of the legislation. *See Merin v. Maglaki, supra*, 126 *N.J.* at 436-37, 599 A.2d 1256.

However, while we defer to the agency's construction of the statute as reflected in its adjudication in this case, we also conclude that its implementing regulations are confusing and do not fairly give notice to anyone as to what the term "at-fault" means or how it should be applied to one-car accidents. *See N.J. Ass'n of Health Care Facilities v. Finley*, 83 *N.J.* 67, 82, 415 A.2d 1147, (administrative regulations "must be sufficiently definite to inform those subject to them as to what is required") *cert. denied sub nom., Wayne Haven Nursing Home v. Finley*, 449 *U.S.* 944, 101 *S.Ct.* 342, 66 *L.Ed.2d* 208 (1980). The agency itself has varied from its original construction of the rule and has been inconsistent in its adjudication of cases involving one-car accidents, sometimes invoking negligence concepts and other times invoking principles closer to strict liability. The record in this case also leads us to conclude that the term "at-fault" may be subject to varying interpretations by insurance companies thus potentially leading to

arbitrary application to drivers seeking insurance. Hence, although we affirm the result in this case,[3] we also conclude that the regulation must be amended to define the term "at-fault" and to clarify how it applies to one-car accidents.

Affirmed.

---

[3] Although it does not affect our decision, we note the ALJ mistakenly stated that Reilly was traveling only fifteen miles per hour, when in fact he was traveling at forty-five miles per hour in weather even Reilly conceded was cold, rainy and likely to result in icy roads. Further, the *Star–Ledger* article he introduced concerning northern New Jersey road conditions was uncorroborated hearsay and did not address the conditions on Route 15. Even if we were to remand this matter for reconsideration on the issue of negligence-based fault, a reasonable trier of fact might conclude that Reilly was at fault. *See Damiano v. N.J. Mfrs. Ins. Co.*, 2001 N.J. Agen Lexis 310 (N.J.Adm. Apr. 30, 2001), (driver who hit another car was at fault for failing to proceed very slowly and with utmost caution in poor driving conditions), *adopted*, 2001 N.J. Agen Lexis 1421 (N.J.Adm. June 23, 2001); *Woo, supra.*